**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 27, 2022

Andrew H. Sauder, Esquire
Dailey LLP
1201 North Orange Street, Suite 7300
Wilmington, Delaware 19808

Sean A. Meluney, Esquire
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801

David B. Anthony, Esquire
Berger Harris LLP
1105 North Market Street, Suite 1100
Wilmington, Delaware 19801

> RE: ***DG BF, LLC, et al. v. Michael Ray, et al.***,
> Civil Action No. 2020-0459-MTZ

Dear Counsel,

I write to address the defendants' pending Motion to Recover Damages Resulting from Plaintiffs' Improperly Issued Injunction (the "Motion").[1] As the Motion is substantially independent of the merits of this action, I refer any readers seeking context to the many decisions that have preceded this one.[2] The Motion is denied for lack of subject matter jurisdiction.

---

[1] Docket Item ("D.I.") 93. Citations in the form "Mot. —" refer to the Motion. Citations in the form "AB —" refer to plaintiffs' answering brief in opposition to the Motion, available at D.I. 112.

[2] *E.g.*, *DG BF, LLC v. Ray* (*Series E Letter*), 2020 WL 3867123, (Del. Ch. July 9, 2020); *DG BF, LLC v. Ray* (*Motion to Dismiss Opinion*), 2021 WL 776742 (Del. Ch. Mar. 1,

## I.     BACKGROUND

The plaintiffs initiated this action on June 11, 2020, claiming the defendants

had fraudulently induced the plaintiffs' investment in the defendant company and

denied plaintiffs certain governance rights under the company's operating agreement

in connection with a pending financing round.  The plaintiffs enjoyed some initial

success at the pleading stage, when the Court was required to take their allegations

as true.  The plaintiffs' complaint was accompanied by a request to enjoin the

pending financing round.[3]  That request was heard on July 26, 2020.[4]

> Applying the standard for a temporary restraining order, I granted a
> TRO enjoining the closing, but not the shopping, of the Series E
> financing, pending a decision on [plaintiffs'] Count VII regarding what
> the Operating Agreement requires for approving Series E financing
> with a liquidation preference above Series D unitholders.  I expedited
> Count VII in view of the timeline [the company] estimated for closing
> the Series E financing.[5]

Based on the parties' positions at argument, and applying Court of Chancery

Rule 65(c), I determined an appropriate bond for the TRO would be $100,000.  But

the parties were unable to agree on a form of order or the type of bond, and required

---

2021); *DG BF, LLC v. Ray* (*Dismissal Order*), 2021 WL 5436868 (Del. Ch. Nov. 19, 2021); *DG BF, LLC v. Ray* (*Fee Letter*), 2022 WL 1618799 (Del. Ch. May 23, 2022).

[3] D.I. 2 (styled as a motion for status quo order); D.I. 6 (same).

[4] D.I. 28.

[5] S*eries E Letter*, 2020 WL 3867123, at *1.

additional guidance from the Court.[6]  The parties also briefed their positions on

Count VII, and I heard argument on July 6, 2020.[7]

That same day, I entered an order implementing the TRO.[8]  That order

observed:

> Section 17.1 of the AGR Sixth Amended and Restated Limited
> Liability Agreement ("Operating Agreement") states that "Each
> Member hereby waives any requirement for security or the posting of
> any bond or other surety and proof of damages in connection with any
> temporary or permanent award of injunctive, mandatory or other
> equitable relief and further agrees to waive the defense in any action for
> specific performance that a remedy at law would be adequate."  Neither
> party has raised this provision of the Operating Agreement, but given
> the dispute surrounding the bond and the unambiguous nature of the
> provision I determine a bond is not required to effectuate this Order.[9]

On July 9, I concluded that the Company's Operating Agreement did not require the

Company to seek approval from the Series D Manager in order to issue the Series E

financing, denied the plaintiffs' request for a declaratory judgment on their

---

[6] D.I. 26; D.I. 27.

[7] D.I. 34.

[8] D.I. 32.

[9] *Id.*; D.I. 33; *see* D.I. 1, Ex. A.  My order misquoted Section 17.1; I have replicated the full provision here.

Count VII, and terminated the TRO.[10]  The defendants filed their Motion seeking damages from the TRO on October 8, 2020.[11]

From there, the plaintiffs' claims were substantially narrowed on the defendants' motion to dismiss.[12]  In particular, the parties agreed that the counts pertaining to the Series E financing were moot; other claims were dismissed for failure to state a claim.[13]  The surviving claims were eventually dismissed due to the plaintiffs' litigation misconduct, and the defendants' fees were shifted to the plaintiffs under the bad faith exception.[14]  While the litigation was bogged down in contentious and contumacious discovery, the defendants' Motion sat to the side. After dismissing the plaintiffs' claims and shifting fees, I gave the parties the opportunity to supplement their positions on the Motion, which they exercised by June 8, 2022.[15]

---

[10] *See* D.I. 39, *Series E Letter*.

[11] *See generally* Mot.

[12] *Motion to Dismiss Opinion*, 2021 WL 776742.

[13] *Id.* at *27.

[14] *Dismissal Order*, 2021 WL 5436868; *Fee Letter*, 2022 WL 1618799.

[15] D.I. 274; D.I. 276.

## II.    ANALYSIS

The Motion seeks $10,528 in salary costs for the time Company executives spent addressing the request to enjoin the Series E Financing between the June 26 hearing and the July 9 termination of the TRO.[16]  I begin with the plaintiffs' argument that this Court lacks subject matter jurisdiction to award damages for an improvidently granted injunction when the parties had contractually agreed to waive the bond requirement.[17]

Until the enactment of Court of Chancery Rule 65.1, the Court of Chancery lacked subject matter jurisdiction to award damages even on a Rule 65 injunction

---

[16] Mot. at 10.

[17] The defendants' Motion headed that argument off at the pass, asserting recovery is possible even where a bond was waived.  Mot. at 8 n.1 (citing and quoting *Concord Steel, Inc. v. Wilm. Steel Processing Co.*, 2008 WL 902406, at *12 & n.92 (Del. Ch. Apr. 3, 2008)).  The plaintiffs did not make that argument in their November 3, 2020, opposition brief, and instead waited until June 8, 2022, to argue in a letter that the Court lacks subject matter jurisdiction to award damages because no bond was ever filed.  D.I. 276.  While the Court gave the parties the opportunity to supply additional submissions on the Motion given the passage of time and fortunes in this matter, the plaintiffs could and should have made their gating jurisdictional argument in their opposition brief.  As the defendants point out, an argument that was not briefed is waived.  D.I. 274 at 3 (citing *Emerald P'rs v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003), *aff'd*, 840 A.2d 641 (Del. 2003)).  "While it is unfortunate the jurisdictional question has been raised so late in this litigation, I note that the question of whether Chancery has subject matter jurisdiction over an action cannot be waived and may be raised by the parties or the Court at any time."  *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *2 n.5 (Del. Ch. June 27, 2019).

bond.[18]  In *Morris v. Whaley*, this Court noted, "[I]t has generally been held that in the absence of statute a court of equity has no power to assess damages upon an injunction bond as an incident of the original cause.  In such case the party aggrieved is put to his action at law on the bond."[19]  *MacFarlane v. Garrett* provides an early example of a claim at law for wrongfully obtaining an unwarranted restraining order, which the Superior Court concluded must meet the elements for malicious prosecution.[20]  *Morris* also noted that there is not a "warrant sustaining such a procedure in the practice of the English High Court of Chancery."[21]  While the federal rules at the time included language providing the pursuit of surety liability without an independent action, Chancery's rules at the time did not.[22]  Rule 65.1 followed, which "provides for proceedings against sureties in the Court of Chancery without need to resort to an independent action" including where security is given in the form of a bond, stipulation, or other undertaking.[23]

---

[18] *Morris v. Whaley*, 203 A.2d 618 (Del. Ch. 1964).

[19] *Id.* at 619 (collecting authorities).

[20] 49 A. 175 (Del. Super. 1900).

[21] *Morris*, 2013 A.2d at 619.

[22] *Id.* at 619–20.

[23] Ct. Ch. R. 65.1; Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 4.07 (2021).

Against that backdrop, I turn to whether this Court can award damages for an improvident injunction where the parties contractually agreed to waive the bond requirement. In my view, Delaware jurisprudence does not plainly answer that question. In 2008 in *Concord Steel*, this Court specified that a bond waiver was not a liability waiver.[24] Two years later, in *Guzzetta v. Service Corporation of Westover Hills*, the Delaware Supreme Court considered, as "the only issue on appeal," "whether the trial court abused its discretion in setting the amount of the injunction bond."[25] In considering that issue, the Court stated: "[A] wrongfully enjoined party has no recourse other than . . . the security," and "[a] party that is wrongfully enjoined may recover damages resulting from the injunction, but that recovery is limited to the amount of the bond."[26] In my view, *Guzzetta* did not address on all fours whether the Court of Chancery could grant damages if no bond was posted, although it supports the conclusion that it cannot.

*Guzzetta* was then applied to a bond waiver in *Newell Rubbermaid v. Storm*, which required a bond to be posted notwithstanding a contractual waiver "in order to assure [the enjoined party's] ability to recover damages if it turns out that the TRO

---

[24] *Concord Steel*, 2008 WL 902406, at *12 & n.92.

[25] 7 A.3d 467, 469 (Del. 2010).

[26] *Id.* at 469–70.

was improperly issued."[27] This Court has since frequently enforced contractual bond waivers in entering injunctive relief, without comment on liability for an improperly issued injunction.[28]

Last year, in *Concerned Citizens of Estates of Fairway Village v. Fairway Cap, LLC*, the Delaware Supreme Court considered whether an enjoined party could recover damages after the Court of Chancery released a bond, in the absence of any objection from the still-enjoined party.[29] A preliminary injunction had been granted favoring two plaintiffs, one of which posted the requisite bond.[30] That plaintiff reached a settlement with the enjoined defendant, and upon that plaintiff's motion,

---

[27] 2014 WL 1266827, at *12 n.72 (Del. Ch. Mar. 27, 2014) (citing *Guzzetta v. Serv. Corp. of Westover Hills*, 7 A.3d 467, 469 (Del. 2010)).

[28] *E.g.*, *Hologram, Inc. v. Caplan*, 2022 WL 117807, at *1 (Del. Ch. Jan. 10, 2022) ("Caplan knowingly and voluntarily agrees to waive the requirement in Rule 65(c) that Hologram post a bond in connection with the preliminary injunction granted by the Court herein. Therefore, no bond shall be required in connection with this Order."); *Premier Dealer Hldg. Co., LLC v. Moore*, 2019 WL 3936123, at *3 (Del. Ch. Aug. 20, 2019) ("Mr. Moore waives the requirement of Court of Chancery Rule 65(c), and Premier is not required to post a bond or give security in order for the preliminary injunction to issue."); *see also PNEC, LLC v. Liberty Utilities (Pipeline & Transmission) Corp.*, 2018 WL 705704, at *1 (Del. Ch. Feb. 2, 2018) (ORDER) ("The bond requirement of Court of Chancery Rule 65(c) is hereby waived."); *Cocam Int'l Enters. Ltd. v. Svensrud*, 2020 WL 4547384, at *3 (Del. Ch. Aug. 05, 2020) ("It is also ORDERED that Plaintiff Cocam need not post a bond.").

[29] 256 A.3d 737 (Del. 2021).

[30] *Id.* at 739.

the Court terminated the bond.[31]  The remaining plaintiff and the defendant sparred over the amount of a replacement bond, but the plaintiff never posted a replacement bond, and the defendant did not move to lift the injunction.[32]  The Court of Chancery noted the case was nearly over and did not require the second plaintiff to file a bond for the injunction to remain in place.[33]  The trial court stated it did not intend to prevent the defendant from recovering damages in the event it had been wrongfully enjoined, and that the lack of a replacement bond did not bar the defendant's recovery.[34]  After trial, the Court of Chancery found in the defendant's favor, and awarded the defendant damages from the wrongful injunction, all of which accrued after the bond was terminated.[35]

The plaintiff appealed.  The Delaware Supreme Court began by pointing out the two purposes of Rule 65(c)'s bond requirement.

---

[31] *Id.* at 740–41.

[32] *Id.* at 741–42.

[33] *Id.* at 741.

[34] *Id.* at 742.

[35] *Id.* at 743.

> First, it assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without possible insolvency of the assured. Second, it provides the plaintiff with notice of the maximum extent of its liability, since the amount of the bond is the limit of the damages the defendant can obtain for a wrongful injunction, provided the plaintiff was acting in good faith. This limitation on damages is sometimes referred to as the "Injunction Bond Rule."[36]

The defendant below argued to the Delaware Supreme Court that federal authority provides that when a trial court exercises its discretion to not require security for a preliminary injunction, the lack of security does not bar the enjoined party from later seeking damages.[37] On the facts before it, the Delaware Supreme Court concluded that the defendant "remained enjoined but could not recover damages for a wrongful injunction" because the defendant failed to ask that the injunction be lifted when the second plaintiff declined to post a replacement bond.[38] The Court distinguished the facts before it from a situation where the trial court issued an order granting a preliminary injunction without security, explaining that

---

[36] *Id.* at 744 (internal quotations and citations omitted).

[37] *Id.* at 745 (citing *Atomic Oil Co. of Okla., Inc. v. Bardahl Oil Co.*, 419 F.2d 1097 (10th Cir. 1969), and *Factors, Etc., Inc. v. Pro Arts*, 562 F. Supp. 304 (S.D.N.Y. 1983)).

[38] *Id.* at 746.

"[w]hether damages would have been recoverable . . . had the court issued a preliminary injunction without security[] is . . . irrelevant."[39]

My review of Delaware law on damages claims in the presence or absence of an injunction bond did not reveal an explicit answer as to whether this Court may award damages to a defendant who was improperly enjoined by an order that waived the bond requirement, for any reason or because the parties contracted for a bond waiver. I therefore turn to other sources.

The weight of authority from other jurisdictions provides: "In the absence of the elements of an action for malicious prosecution, it is established by the great weight of authority that no action will lie by defendant in an injunction suit, independently of bond or undertaking, for damages for the wrongful suing out of the injunction."[40] In the absence of malice or a bond, harm from an improvidently entered injunction is "an instance of *damnum absque injuria* [("loss without remedy")], and is like any ordinary suit which leaves the defendant heir to much inconvenience and pecuniary loss, notwithstanding a final judgment in his favor."[41]

---

[39] *Id.* at 745.

[40] 45 A.L.R. 1517 (1926) (collecting cases).

[41] *Id.* (quoting *St. Louis v. St. Louis Gaslight Co.*, 82 Mo. 349 (Mo. 1884)); *see also Robinson v. Kellum*, 6 Cal. 399 (Cal. 1856); *Manlove v. Vick*, 55 Miss. 567 (Miss. 1878); *Hussey v. Neal*, 49 Ga. 160 (Ga. 1873); *Steller v. Thomas*, 45 N.W.2d 537 (Minn. 1950); *Gaume v. N.M. Interstate Stream Comm'n*, 450 P.3d 476, 482–83 (Ct. App. N.M.) ("[I]n

Allowing recovery in the absence of malice or a bond would be "tantamount to permitting a malicious [] prosecution action against a plaintiff without allowing him the usual common [] law shields of good faith and probable cause."[42] The injunction bond was an equitable innovation designed to provide relief for an improvidently entered injunction in the absence of malice.[43]

Federal jurisprudence is persuasive on this topic: Federal Rule of Civil Procedure Rule 65(c) similarly requires a bond to secure preliminary injunctive relief, and Rule 65.1 specifies an action on that bond can be brought in the equitable proceeding that birthed the injunction.[44] Federal law has consistently held a court in equity lacks subject matter jurisdiction to award damages from an injunction in the absence of a bond. In 1881, the United States Supreme Court concluded in *Russell*

---

cases where the trial court did not require the plaintiff to post security, courts continued to adhere to the historical practice of denying damages to the wrongfully enjoined. . . . This appears to remain the general rule today in every jurisdiction that has addressed the question.") (collecting cases and citing 45 A.L.R. 1517); *Jamaica Lodge 2188 of Broth. of Ry. and S.S. Clerks, Freight Handlers, Exp. And Station Emp. v. Ry. Exp. Agency, Inc.*, 200 F.Supp. 253 (E.D.N.Y. 1961); *Greenwood Cty. v. Duke Power Co.*, 107 F.2d 484 (4th Cir. 1939); *In re UAL Corp.*, 412 F.3d 775 (7th Cir. 2005).

[42] *Interlocutory Injunctions and the Injunction Bond*, 73 HARV. L. REV. 333, 343–44 (1959).

[43] *Gaume*, 450 P.3d at 481 (collecting authorities).

[44] *See Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988).

*v. Farley*[45] that federal courts sitting in equity "can, in order to give complete relief, enter judgment on an injunction bond."[46] *Russell* goes on: "Where no bond or undertaking has been required, it is clear that the court has no power to award damages sustained by either party in consequence of the litigation, except by making such a decree in reference to the costs of suit as it may deem equitable and just."[47] A few years later, in *Meyers v. Block*, the United States Supreme Court reiterated:

> Without a bond, no damages can be recovered at all. Without a bond for the payment of damages or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution.[48]

More recently, the United States Supreme Court has cited *Russell* for the succinct proposition that "[o]beying injunctions often is a costly affair. . . . A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."[49] As the Ninth Circuit has explained,

---

[45] 105 U.S. 433 (1881).

[46] *U.S. Steel Corp. v. United Mine Workers of Am.*, 456 F.2d 483, 491 (3d Cir. 1972) (discussing *Russell*, 105 U.S. 433).

[47] *Russell*, 105 U.S. at 437.

[48] 120 U.S. 206, 211 (1887).

[49] *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 770 & n.14 (1983) (citing *Russell*, 105 U.S. at 437 , and *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1167–68 (9th Cir. 1976), *cert. denied*, 431 U.S. 903 (1977)).

"the rule which prevails in the federal courts . . . . is that in the absence of . . . a bond, there may be no recovery of damages for the issuance of a temporary injunction even although it may have been granted without just cause."[50]

More locally, the Third Circuit has concluded *Russell* was intended "to suggest that such an award was not within the jurisdiction of a court of equity."[51]  It has also explained that a bond represents the plaintiff's consent to liability up to that amount as the price for an injunction; "[o]therwise, plaintiff could be found liable for damages only on the theory of malicious prosecution, an action at law."[52]  The Third Circuit has stated:  "There is no such thing as a cause of action incurred as a result of compliance with an injunction.  The only recourse seems to be a suit on a bond given by the party procuring the injunction."[53]  Where no bond was entered to support an injunction, no suit will lie.[54]

---

[50] *Benz v. Compania Naviera Hidalgo, S.A.*, 205 F.2d 944, 948 (9th Cir. 1953) (collecting authorities).

[51] *U.S. Steel*, 456 F.2d at 491.

[52] *Com. Tankers Corp. v. Nat'l Maritime Union of Am.*, 553 F.2d 793, 800 (3d Cir. 1977) (citing *Benz*, 205 F.2d at 948, and 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 65.10(1) at 65.98-99)).

[53] *Campbell Soup Co. v. Martin*, 202 F.2d 398, 399 n.1 (3d Cir. 1953) (citing *Meyers v. Block*, 120 U.S. 206 (1887)).

[54] *Id.* at 400.  I do not believe the two cases the appellee in *Concerned Citizens* presented to the Delaware Supreme Court dislodge this weight of authority.  *See supra* note 37.  Both address jurisdiction to award damages from an improvident injunction where a bond secured a preliminary injunction, but was decreased or discharged upon entry of a

The federal explanation that a court of equity lacks subject matter jurisdiction to award damages for an improvident injunction in the absence of a bond is tidily consistent with the Delaware law with which we began. This court of equity lacks subject matter jurisdiction to award damages for an improvidently entered injunction, because that claim must be brought as a claim for malicious prosecution in a court of law; the exception is when a bond is ordered and entered, which brings the claim within the Chancery proceeding due to Court of Chancery Rule 65.1.[55]

I conclude that because a bond was not entered to secure an injunction due to the parties' contractual waiver of that bond, this Court lacks subject matter jurisdiction to award damages for an improvidently entered injunction.

### III. CONCLUSION

For the foregoing reasons, the defendants' Motion is **DENIED**. To the extent an order is required to effectuate this decision, **IT IS SO ORDERED**. I believe that all outstanding matters in this case has been resolved; I ask counsel to please notify me if this is not the case within twenty days.

---

permanent injunction that was then reversed on appeal. *Atomic Oil*, 419 F.2d at 1100–01; *Factors Etc.*, 562 F. Supp. at 305. Neither case addresses jurisdiction to award damages in the absence of a bond, and *Factors Etc.* actually reinforces that under the "injunction bond rule," "[a]bsent a claim of malicious prosecution, damages for wrongful injunction are limited to the amount of a bond." 562 F. Supp. at 308.

[55] *See Morris*, 203 A.2d at 619–20; Ct. Ch. R. 65.1.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor


MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*