**FACTORS ETC., INC. and Boxcar Enterprises, Inc., Plaintiffs,**

v.

**PRO ARTS, INC. and Stop and Shop Companies, Inc., Defendants.**

No. 77 Civ. 4704 (CHT).

United States District Court, S.D. New York.

April 14, 1983.

Golenbock & Barell, New York City, for plaintiffs; Michael C. Silberberg, Geri S. Krauss, New York City, of counsel.

Schulman, Berlin & Davis, P.C., New York City, for defendants; William J. Davis, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Defendants Pro Arts, Inc. and Stop and Shop Companies, Inc. move this Court to vacate the stay of this action imposed on May 11, 1982, 541 F.Supp. 231, to enter summary judgment dismissing plaintiffs' complaint, and to award damages for wrongful injunction. For the reasons discussed below, the stay is vacated and defendants' motion for summary judgment is granted. The matter is referred to Magistrate Kent Sinclair for a determination of the damages to which defendants are entitled.

*Background*

Briefly stated, the facts of this case, which are set forth in greater detail in the earlier opinions of this Court, are as follows.

Factors Etc., Inc. and Boxcar Enterprises, Inc. brought this action charging defendants with infringing their exclusive right to exploit Elvis Presley's name and likeness. The Court entered a preliminary injunction, 444 F.Supp. 288 (S.D.N.Y.1977), and the Second Circuit affirmed, 579 F.2d 215 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (*"Factors I"*). Subsequently, this Court entered summary judgment in favor of plaintiffs and issued a permanent injunction prohibiting defendants from marketing Presley memorabilia, 496 F.Supp. 1090 (S.D.N.Y.1980). This time, however, the Second Circuit reversed, 652 F.2d 278 (2d Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982) (*"Factors II"*). The court held that Tennessee law applies to this action, and under Tennessee law—as enunciated by the Sixth Circuit in *Memphis Development Foundation v. Factors Etc., Inc.,* 616 F.2d 956 (6th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)—there is no descendible right to publicity.

Defendants then moved for summary judgment and for damages for wrongful injunction. Plaintiffs cross-moved for summary judgment, or alternatively, for a stay of this action. In support of their motion, plaintiffs cited *Commerce Union Bank v. Coors of the Cumberland, Inc.,* 7 Media L.Rptr. 2204 (Tenn.Ch.1981), a recent opinion of the Tennessee Chancery Court holding that a descendible right to publicity exists under Tennessee law. This Court stayed the action to permit plaintiffs to petition the Second Circuit to recall its mandate and to rehear the case on the basis of *Commerce Union Bank.*

The Second Circuit has since denied plaintiffs' petition for rehearing, 701 F.2d 11 (1983). The court concluded that it was unnecessary to consider the effect of *Commerce Union Bank* on its earlier decision in light of a second Tennessee Chancery Court decision, *Lancaster v. Factors etc., Inc.,* 9 Media L.Rptr. 1109 (Tenn.Ch.1982), holding that Tennessee does not recognize a descendible right to publicity. Accordingly, defendants now move to vacate the stay

and renew their motions for summary judgment and for damages for wrongful injunction.

In light of the Second Circuit's refusal to recall its mandate, plaintiffs do not oppose vacating the stay or entry of summary judgment in defendants' favor. They do, however, object strenuously to any assessment of damages for wrongful injunction, on two grounds. First, plaintiffs claim that the Court's discharge of the injunction bond,[1] together with defendants' failure to challenge the discharge of the bond on appeal, extinguished this Court's jurisdiction to award damages for wrongful injunction. Second, they argue that the Court has discretion to deny damages for wrongful injunction, and that the peculiar facts of this case warrant such a denial.

Defendants, on the other hand, argue that when the Second Circuit reversed this Court's judgment, it reversed the discharge of the bond, one of the provisions of that judgment. Thus, they maintain that the Court has jurisdiction to award damages for wrongful injunction. Moreover, defendants contend that because Factors, as a result of the injunction, has had a "virtual monopoly" over the market for Elvis Presley memorabilia for some years, denying them damages for wrongful injunction would be "grossly inequitable." Memorandum of Points and Authorities in Support of Defendants' Motions for Summary Judgment and an Assessment of Damages Against the Plaintiffs and in Opposition to the Plaintiffs' Motion for Summary Judgment, at 22.

*Discussion*

▆▆▆ The "injunction bond rule" provides that in the absence of a bond, a party may not recover for damages sustained by a wrongfully issued injunction, unless the suit was brought maliciously and without probable cause. *See Commerce Tankers Corp. v. National Maritime Union,* 553 F.2d 793, 800 (2d Cir.1977), *cert. denied,* 434 U.S. 923, 98

S.Ct. 400, 54 L.Ed.2d 280 (1977); 7 Pt. 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 65.10[1], at 65–98 to –99 (2d ed. 1982). Plaintiffs argue, citing *Buddy Systems, Inc. v. Exer-Genie, Inc.,* 545 F.2d 1164 (9th Cir. 1976), *cert. denied,* 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977), that the rule precludes an award of damages in this action because this Court discharged the bond required by the preliminary injunction and defendants did not specifically raise the discharge of the bond on appeal.

*Buddy Systems* was an "action on a bond" pursuant to 28 U.S.C. § 1352 to recover damages for wrongful injunction. In an earlier suit, the district court entered a preliminary injunction against Buddy Systems, requiring Exer-Genie to post a $100,-000 bond. After trial, the court entered a permanent injunction in favor of Exer-Genie and exonerated the bond. When the district court's judgment was reversed on appeal, Buddy Systems filed suit to recover damages for wrongful injunction and was awarded $35,000. The Ninth Circuit reversed the damage award, holding that the district court had no jurisdiction in an action on a bond where the bond had previously been exonerated. The court rejected the argument that the exoneration was implicitly reversed by its reversal of the permanent injunction. 545 F.2d at 1169 n. 10, and faulted Buddy Systems for failing to raise the alleged wrongful exoneration on appeal. *Id.* at 1169.

*Buddy Systems* is not the only case that has addressed this issue, however. The Tenth Circuit reached a different conclusion in *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097 (10th Cir.1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970), a decision rejected by the *Buddy Systems* court. 545 F.2d at 1169. Like *Buddy Systems, Atomic Oil* was an action to recover damages for wrongful injunction. In an earlier action, the district court had entered a preliminary injunction in fa-

---

1. Plaintiffs were required to post a $100,000 bond as a condition for securing the preliminary injunction. In the Interlocutory Judgment entered August 27, 1980, the Court made the injunction permanent, and discharged plain-

tiffs' bond. Defendants subsequently moved to have the bond reinstated. The Court denied their motion in an Opinion dated September 30, 1980.

vor of Atomic Oil, ordering it to post a $50,000 bond. After trial, the court granted a permanent injunction, discharged the $50,000 bond, and ordered Atomic Oil to post a $25,000 bond. Both parties appealed, and the Tenth Circuit reversed, concluding that the injunction was based on a clearly erroneous finding. 419 F.2d at 1099–1100. In a separate action, Bardahl sought recovery on both bonds, and the district court entered judgment for $75,000. On appeal, Atomic Oil argued that recovery on the first bond was precluded by its discharge. The Tenth Circuit affirmed the district court, stating that the enjoining court's order discharging the bond "was plainly not a negation of damages under the bond." *Id.* at 1101. The Tenth Circuit concluded that its previous holding necessarily determined that the temporary injunction had been improperly granted and served to activate the conditions of both bonds. *Id.* at 1103. *See also Universal Athletic Sales Co. v. American Gym,* 480 F.Supp. 408 (W.D.Pa.1979).

Both *Atomic Oil* and *Buddy Systems* can be distinguished from the instant case, however; both were independent actions on the bond rather than motions for the recovery of damages made to the enjoining court in the context of the original action.[2] As the *Buddy Systems* court noted, the bond itself was the only basis for jurisdiction in the case before the court.[3] 545 F.2d at 1166.

In *Arkadelphia Milling Co. v. St. Louis Southwestern Ry.,* 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919), the Supreme Court discussed the power of the *enjoining* court

to award damages for wrongful injunction under a bond that it had discharged. The Court posited, but found it unnecessary to decide the question whether reversal of the main provisions of a final decree that has the effect of discharging a bond is an implicit reversal of the discharge. *Id.* at 143–44, 39 S.Ct. at 241–242. The Court concluded that because the lower court had explicitly retained jurisdiction for the purpose of making further orders as might be necessary, and the Supreme Court's earlier mandate permitted further proceedings, defendants' failure to appeal from the enjoining court's action in discharging the bonds did not prevent an assessment of damages under the bonds. *Id.* at 144, 39 S.Ct. at 241.

■ Thus, regardless of whether the Second Circuit's mandate reversed the discharge of the bond—and arguably it did, since it reversed the entire judgment without distinguishing among its provisions—*Arkadelphia* provides support for the conclusion that this Court may properly award damages. This Court entered the permanent injunction and discharged the bond in an Interlocutory Judgment entered August 27, 1980. In that judgment this Court, like the court in *Arkadelphia,* retained jurisdiction for the purpose of making any further orders necessary and proper in this action. Although the Second Circuit's mandate did not expressly authorize further proceedings—authorization that was, admittedly, significant to the Court in *Arkadelphia* —neither did it expressly limit or foreclose them.[4] Entry of summary judgment dis-

**2.** Of course, *Atomic Oil* implicitly addresses our case, as it is unlikely that a court that would permit a damage award in a separate action would preclude the enjoining court from awarding those damages in the original action.

**3.** Furthermore, the *Buddy Systems* court noted that it was not reviewing the propriety of the ruling of the enjoining court, following reversal of the permanent injunction, not to reinstate the bond. 545 F.2d at 1169 n. 9.

**4.** In an earlier appeal in the *Arkadelphia* proceedings, the Supreme Court had expressed some doubt whether the district court could award damages in view of the form of the mandate, which reversed and remanded "with instructions to dismiss the bill." *St. Louis, Iron*

*Mountain & Southern Ry. v. McKnight,* 244 U.S. 368, 373 n. 1, 37 S.Ct. 611, 612 n. 1, 61 L.Ed. 1200 (1917). The Court never had to decide the question, however, because, as it turned out, the mandates did contain a provision authorizing further proceedings. *Arkadelphia Milling Co. v. St. Louis Southwestern Ry., supra,* 249 U.S. at 143, 39 S.Ct. at 241. In the instant case, the Court of Appeals simply reversed the judgment of this Court, without expressly remanding for further proceedings. Nevertheless, this Court has jurisdiction to determine issues not decided by the Court of Appeals. *See Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700, 703 (9th Cir.1976) (denying petition for rehearing) ("open reversal is also a remand to the district court to hear

missing plaintiffs' complaint and consideration of the issue of damages are appropriate in light of the Second Circuit's mandate.[5] Accordingly, this Court concludes that its earlier discharge of the bond, and defendants' failure specifically to appeal that discharge, does not preclude an award of damages.

■ Plaintiffs further argue that the Court has discretion to deny damages under an injunction bond, citing *H & R Block, Inc. v. McCaslin,* 541 F.2d 1098 (5th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977), and *Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994 (D.C.Cir.1973). They argue that denying damages is appropriate in this case, first, because the preliminary injunction was affirmed by the Second Circuit; second, because defendants did not argue at the preliminary injunction stage that Tennessee law applied to this action; and third, because the outcome of the appeal in *Factors II,* which hinged on the "esoteric question" of the deference to be accorded to the Sixth Circuit's view of Tennessee law, could not reasonably have been anticipated.

The course of this litigation has certainly been unusual—as plaintiffs point out, the Second Circuit affirmed the "wrongful" preliminary injunction. Furthermore, the Court agrees with the plaintiffs that the Second Circuit's decision in *Factors II* is not one that could reasonably have been anticipated. Nevertheless, the Court will not decline to award damages to defendants simply because plaintiffs acted in good faith or because defendants failed to argue, at the outset, that Tennessee law applied in this action. The fact remains that it is the defendants who have prevailed in this suit, and that for several years plaintiffs, by virtue of an injunction granted by this Court, had the benefit of an exclusive license to which they were ultimately found not entitled. Consequently, defendants may recover damages for wrongful injunction.

■ Of course, defendants are entitled only to those damages shown to have been proximately caused by the injunction. *Pargas, Inc. v. Empire Gas Corp.,* 423 F.Supp. 199, 244 (D.Md.), *aff'd,* 546 F.2d 25 (4th Cir.1976); 11 C. Wright & A. Miller, Federal Practice & Procedure § 2973 at 655 (1973). Furthermore, the theory of the injunction bond rule is that "[t]he plaintiff, in effect, consent[s] to liability up to the amount of the bond, as the price for it." *Commerce Tankers Corp. v. National Maritime Union, supra,* 553 F.2d at 800. Absent a claim of malicious prosecution, damages for wrongful injunction are limited to the amount of the bond. *Id.; Adolph Coors Co. v. A & S Wholesalers, Inc.,* 561 F.2d 807, 813 (10th Cir.1977). Therefore, the damages awarded to defendants may not exceed $100,000.

Accordingly, the stay is vacated and summary judgment will be entered dismissing the complaint against the defendants. This matter is hereby referred to Magistrate Kent Sinclair to conduct hearings on the amount of damages to which defendants

---

and to decide any issues . . . properly presented to the district court which we did not decide"). *See also United States v. Wintner,* 247 F.Supp. 47 (N.D.Ohio 1964). Furthermore, the judgment appealed from was an interlocutory judgment; this Court never entered final judgment in this action.

Finally, the conclusion that this Court has jurisdiction to consider the issue of damages does not conflict in any way with *Arkadelphia Milling Co. v. St. Louis Southwestern Ry., supra,* or *St. Louis, Iron Mountain & Southern Ry. v. McKnight, supra.* There, it was the provision in the mandate specifically remanding the case "with instructions to dismiss the bill" that caused the Supreme Court to "doubt" the district court's jurisdiction to award damages.

5. The Court recognizes, moreover, that it would be inequitable to refuse to award damages to defendants on the ground that the bond was discharged, in light of the fact that this Court denied defendants' motion to reinstate the bond pending appeal. See Opinion dated September 30, 1980. In denying that motion, the Court rejected defendants' claim that without the bond they would be unable to obtain damages if the injunction were vacated on appeal, concluding that plaintiffs' ability to maintain the bond for three years suggested that they would be able to pay damages that might be assessed against them.

are entitled and to submit a recommendation to the Court.

So ordered.